Alan J. Leiman (OSB No. 980746)
alan@leimanlaw.com
Drew G. Johnson (OSB No. 114289)
drew@leimanlaw.com
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **SHAWNA BELL,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>      v.<br><br>**CONSUMER CELLULAR, INCORPORATED,** an Oregon Domestic Business Corporation,<br><br>Defendant. | **CASE NO.:** 3:15-cv-00941-SI<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES; INCENTIVE AWARD; AND COSTS OF SETTLEMENT ADMINISTRATION.** |

## CERTIFICATION OF CONFERRAL

Pursuant to L.R. 7-1(a), counsel for Plaintiff conferred with attorney Francis C. Barnwell, counsel for Defendant, who pursuant to the terms of the Amended Settlement (Doc. 20-3) does not oppose this motion.

## INTRODUCTION

Plaintiff Shawna Bell ("Plaintiff") and Defendant Consumer Cellular, Incorporated, ("Defendant") (collectively, "Parties"), reached a proposed settlement of Plaintiff's unpaid overtime claim arising under the Fair Labor Standards Act ("FLSA") and Oregon wage-and-hour laws. The proposed settlement was subsequently amended and the Amended Settlement was

submitted to the Court for preliminary approval. (Doc. 20). The Court preliminarily approved the proposed settlement as fair, adequate, and reasonable (Doc. 23), and the Court-approved notice was sent to all putative class members. The Parties will be separately moving for final approval of the settlement following the close of the notice period. Plaintiff now respectfully requests the Court approve her request for attorneys' fees and costs incurred in the prosecution and settlement of this case, and to allow her to recover a modest incentive award for her time and efforts on behalf of the putative class.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff incorporates by reference the facts, procedural history, and settlement terms in the Parties' Renewed Joint Motion for Preliminary Settlement Approval, (Doc. 20). Plaintiff seeks approval of attorneys' fees in the amount of 27.8% of the $900,000 Gross Settlement Fund created in this case, equaling $250,000. (Leiman Decl. ¶7.), and settlement administration costs of $24,000, (Leiman Decl., Ex. 4.). Plaintiff is also seeking a $2,500 incentive award to compensate her for her efforts as the class representative. These amounts are reasonable for this case, and the Court should approve Plaintiff's request.

## ARGUMENT

### I.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES

In certified class and collective actions, courts may award attorneys' fees and costs when approving a negotiated settlement. *See* Fed. R. Civ. P. 23(h); 29 U.S.C. § 216(b). For class action settlements that include attorneys' fees, the court must evaluate the requested fees in the overall context of the settlement and ensure the fee award is reasonable. *Deaver v. Compass Bank*, 2015 WL 8526982, at *10 (N.D. Cal. Dec. 11, 2015) (citing *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002)); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where the settlement results in a common fund shared by the class, the Ninth Circuit has approved the percentage method and lodestar method for awarding attorneys' fees. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. The percentage method

calculates attorneys' fees based on a percentage of the common fund. *Rosales v. El Rancho Farms*, 2015 WL 4460635, at \*18 (E.D. Cal. July 21, 2015). Fees under the lodestar method are calculated by multiplying the hours counsel reasonably spent litigating by a reasonable hourly rate, and the award may be enhanced by a multiplier. (*Id.*)

In common fund cases, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Courts typically use the percentage approach when awarding attorneys' fees with the lodestar serving as a "cross-check" on the reasonableness of the percentage. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013); *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, at \*18 (E.D. Cal. Nov. 27, 2012). In *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301,1311 (9th Cir. 1990) the Ninth Circuit held that attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members do not claim funds and money is returned to defendants.

### A. The Court Should Award the Requested Attorneys' Fees Using the Percentage-of-the-Fund Method

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiff and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (stating that the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (recognizing common fund doctrines).

The common fund doctrine rests on the understanding that, in class action litigation, many class members benefit from the common fund, but they may not have played a large role in the litigation that led to the fund. *Van Gemert*, 444 U.S. at 478. To avoid unjustly enriching some class members, attorneys' fees are assessed against the entire fund, "thus spreading fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund

is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900, n. 16 (1984).

Fees from a common fund are particularly appropriate where, as here, "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Staton*, 327 F.3d at 972 (quoting *Van Gemert*, 444 U.S. at 479); *accord Barbosa* 297 F.R.D. at 448 ("Here, the Settlement Agreement applies a formula pursuant to which each Class Member will receive a mathematically ascertainable payment; application of the percentage of the common fund doctrine is appropriate."); *Franco*, 2012 WL 5941801, at *15 (stating that "the Settlement applies a distribution formula pursuant to which each Class Member . . . will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine is appropriate"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (where settlement agreement "applies distribution formulas pursuant to which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine appropriate").

The percentage of the fund method is appropriate for a number of well-recognized reasons. One of the most important reasons is that the percentage method accomplishes fee spreading in a manner that comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"); *Vizcaino*, 290 F.3d at 1047 (recognizing that "the size of the recovery constitutes a suitable measure of the attorneys' performance") (internal quotations omitted). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-orients." *Swedish Hosp. Corp*, 1 F.3d at 1269 (internal quotation marks and citation omitted).

Additionally, when clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery.    The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation.  *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (noting that in a common fund case, the object "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible").

Here, the percentage-of-the-fund method is appropriate.  First, as mentioned, the creation of a common fund favors use of the percentage method.  *See, e.g., Vizcaino,* 290 F.3d 1043, 1050; *Deaver,* 2015 WL 8526982, at *10 ("Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").  Second, Plaintiff's Counsel secured a settlement with a common fund of up to a gross amount of $900,000, of which Defendant is obligated to pay up to $625,000 to participating and non-participating Oregon subclass members.[1]  The gross settlement amount includes the requested attorneys' fees, incentive award, and costs of settlement administration, and the Amended Settlement provides for fixed monetary payments to all participating members of all three subclasses, and to non-participating members of both Oregon subclasses.    Pursuant to the terms of the preliminarily approved Amended Settlement, the amount that participating class members and non-participating Oregon subclass members receive will not be impacted by

---

[1] The actual amount claimed remains a variable at this time because the time during which to return a Claim form is still running.

5 – PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, INCENTIVE AWARD, AND COSTS OF SETTLEMENT ADMINISTRATION

the Court's determinations on attorneys' fees, the incentive award, and the costs of settlement administration.  In the event the Court were to reduce any of these items, the class recoveries would remain the same and the Defendant's reversion would increase.  Third, other than Plaintiff, none of the other class and collective members have formal attorney-client agreements with Plaintiff's Counsel, and it is appropriate that an award of fees should be shared by each class member who receives benefit from the settlement. Fourth, the common fund is appropriate because Plaintiff's Counsel took this case on a contingency basis. *See, e.g., Blum*, 465 U.S. at 900 n.16.  The fee agreement between Plaintiff and her counsel specified a 33% contingency which Plaintiff's Counsel voluntarily reduced by $50,000 at the settlement mediation to the requested 27.8%. (Leiman Decl. ¶7.).  Plaintiff's Counsel have not been paid for their time or expenses by Plaintiff or the class since the case started over a year ago, while bearing the risk that the litigation would be unsuccessful.  It is therefore appropriate that an award of attorneys' fees would mirror the fee that Plaintiff's Counsel might be paid in a contingency arrangement negotiated with individual plaintiffs. *See In re Continental Illinois Sec. Litig.*, 962 F.2d at 572.

**B.      The Court Should Approve the Request of 27.8% in Attorneys' Fees**

In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.33 percent, with 25 percent considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  But "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009); *see also Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) (noting other courts in this circuit "usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million"); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) ("[I]n smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark."); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in fees above 25%.").

Courts determining whether attorneys' fees as a percentage of a common fund are reasonable generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) the awards made in similar cases. *Barbosa*, 297 F.R.D. at 449 (citing *Vizcaino*, 290 F.3d at 1047).

### 1. Results Achieved

The most critical factor in granting attorneys' fees is the overall result and benefit to the class. *Richardson v. THD At-Home Servs., Inc.*, 2016 WL 1366952, at *8 (E.D. Cal. Apr. 6, 2016). Here, the Amended Settlement provided a total gross settlement amount of up to $623,500 to pay the Settlement Class, with the balance of the gross settlement amount allocated to the negotiated attorneys' fees, incentive award, and settlement administration costs requested herein.

The Amended Settlement as preliminarily approved provides for a putative Settlement Class of 728 class members divided into three subclasses. Data provided in settlement negotiations showed that the individual unpaid overtime pay at issue ranges from a low of $.02 to a high of $822, with the next closest amount of $360. (Leiman Decl., Ex. 1.) Not including the two individuals at $360 and $822, the average amount of unpaid overtime due to the regular rate calculation error that took place over a seven-month period is $11.84. (*Id.*) 646 of the 728 putative class members had less than $25 of overtime pay at issue. (*Id.*) Defendant has represented to the Court that prior to the commencement of this action it had also paid then current Arizona and Oregon employees the amount of their actual re-computed overtime after correcting for the seven-month regular rate calculation error. (*Id.*)

The Amended Settlement provides that participating Arizona subclass members receive their actual re-computed overtime after correcting for the regular rate computational error, or $50 whichever is greater. Participating Oregon employees who worked for Defendant as of June 29, 2015 (the "Oregon Current Employee Subclass") are to receive $880, and participating Oregon

employees who left Defendant's employ before June 29, 2015 (the "Oregon Former Employee Subclass") are to receive $1,791. Members of the Oregon subclasses who do not return Claim Forms or request exclusion will receive $35. These amounts are not insignificant when measured against the actual damages incurred by the putative Settlement Class. This is an excellent result for Plaintiff and the putative class members.

While this recovery is significant for the Settlement Class Members themselves relative to their actual damages, it also compares favorably with other wage and hour settlements in which courts have awarded higher than benchmark attorneys' fees. *See, e.g., Deaver*, 2015 WL 8526982, at *11 (approving attorneys' fees in wage and hour case of one-third the common fund where plaintiffs faced "significant challenges" maintaining class certification and prevailing at trial and settlement resulted in average payout of $700); *Barbosa*, 297 F.R.D. at 449, 454 (E.D. Cal. 2013) (noting wage and hour claims resulting in a little over $600 per person was good result and awarding one-third of common fund).

### 2. *Risk of Litigation*

"The risk of costly litigation and trial is an important factor in determining the fee award." *Rosales*, 2015 WL 4460635, at *20 (citing *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299–1301 (9th Cir. 1994)). In considering the risks posed in litigation, the Supreme Court explained "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague,* 505 U.S. 557, 562, (1992). "In cases where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate." *Franco*, 2012 WL 5941801, at *16; *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000); *In re Heritage Bond Litig.,* 2005 WL 1594403, at *19 n.14 (C.D. Cal. June 10, 2005) (discussing Ninth Circuit cases awarded attorney fees of one-third of the total recovery).

Plaintiff faced legitimate risks on multiple fronts in litigating this "hybrid" Rule 23 class and collective action. While the FLSA claims were common to the two-state collective, the

Oregon Rule 23 subclasses had separate issues relating to each subclass' entitlement to an Oregon wage penalty. (*See* Doc. 20, §F, pp. 8-9). These hybrid class/collective cases present substantial risks that subclass groupings may be decertified after significant time and expense because of the myriad claims and issues involved in the dispute. Here, Defendant raises a number of defenses that if successful could have significantly devalued or ended the case. Defendant claims that Plaintiff did not provide an ORCP 32H notice of class action that Defendant believes was required. Defendant also disputes the entitlement of the 299 Current Oregon Employee subclass members to an ORS 652.150 final paycheck penalty for failure to pay all wages when due. Defendant also contends that it did not act "willfully". (*Id*, §G, ¶ 2(b), p. 12-13).

All of these legal and factual issues presented serious risks to the viability of this case and the potential recovery Plaintiff could receive. Plaintiff's Counsel's ability to navigate these matters and reach a very favorable settlement for the Settlement Class Members warrants the slight (2.8%) upward departure from the 25% percentage method benchmark to 27.8% of the total common fund.

### 3. Skill Required and Quality of Work Performed

"The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award." *Richardson*, 2016 WL 1366952, at *9. "FLSA claims involve complex mixed questions of fact and law, and issues must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."). *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981). Moreover, "[t]he prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (internal quotations omitted). Both of these complexities are exacerbated when taken together, as hybrid Rule 23 class/collective actions are the most complex type of FLSA cases. *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and

that among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." (internal quotations omitted).)

Plaintiff's Counsel, Leiman & Johnson, LLC, have substantial experience in representing employees in wage and hour class and collective actions and the firm focuses its practice on wage and hour litigation. Alan J. Leiman has over 24 years of litigation experience, including 5 years of experience representing Plaintiffs in wage and hour class and collective actions. (Leiman Decl. ¶¶1-4.) Drew G. Johnson has six years of legal experience, including 5 years of litigation experience representing Plaintiffs in wage and hour class and collective actions. He also has a Masters Degree in Conflict Resolution in addition to 15 years of experience as a civil engineer and technical management consultant that he applies to his work evaluating complex wage and hour cases. (*Id.* ¶5.) Stacy McKerlie, the associate attorney who worked on the matter, has 2 years experience and has left the firm to work for the Oregon Bureau of Labor and Industries. (*Id.* ¶6.) Using their combined experience and expertise in wage and hour class and collective cases they were able to recognize an FLSA violation that impacted over 700 employees and which otherwise would have gone undiscovered, and secure the excellent result for Plaintiff and the putative settlement class in this case. *See Barbosa*, 297 F.R.D. at 449 (holding class counsel's specialized skill in wage and hour law was generally an asset to the class that favored higher percentage of common fund). The Court should approve the requested upward deviation (2.8%) from the common fund benchmark.

### 4. Contingent Nature of the Fee and the Financial Burden

In cases taken on contingency, courts tend to find above-market-value fee awards more appropriate to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees. *Deaver*, 2015 WL 8526982, at *11 (citing *In re WPPSS Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). "This is especially true where . . . class counsel has

significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded the 33 percent benchmark percentage sough here." *Id.*; *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding attorneys' fees of 33 percent of the common fund based in part on the effort, skill, and experience of class counsel). Indeed, in contingency cases lasting lengthy periods of time, the risk of non-payment after years of litigation justifies a significant fee award. *Id.*

Plaintiff's Counsel took this case on a contingent basis, fronting the costs of litigation and providing their time without any guarantee they would be compensated. Given these risks, the slight upward departure from the percentage method benchmark is justifiable. *See Richardson*, 2016 WL 1366952, at *9 ("In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, this factor weighs slightly in favor of a departure from the benchmark fee award.")

### 5. Awards Made in Similar Cases

Particularly in wage and hour class actions, many courts in this circuit have held that a thirty (30) percent or higher award was appropriate. *See Miller*, 2015 WL 4730176, at *8 (stating courts in the Ninth Circuit "usually award attorneys' fees in the range of 30–40% in wage and hour class actions" where the common fund is under $10 million); *see also Deaver*, 2015 WL 8526982, at *9 (approving attorneys' fees of 33% of common fund); *Lusby v. GameStop Inc*., 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (approving attorneys' fees of 33% of common fund); *Burden v. SelectQuote Ins. Servs*., 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa*, 297 F.R.D. at 450 (same); *Franco*, 2012 WL 5941801, at *18 (approving attorneys' fees of 33% of common fund); *Garcia v. Gordon Trucking, Inc.,* 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (same); *Vasquez,* 266 F.R.D. 482 (approving attorneys' fees of 33.3% of common fund); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, at * 4 (E.D. Cal. Nov. 14, 2007) (same). Plaintiff's request for 27.8% of the common fund comports

with attorneys' fees approved in other wage and hour class actions in this circuit, further supporting the slight upward deviation from the benchmark.

### C.  The Lodestar Cross-check and Multiplier Support the Requested Fee Award

Courts awarding fees based on a percentage of the common fund use the lodestar "cross-check" method. A "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230, at *25 (E.D. Cal. 2014) (*quoting In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005)); *see also In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check."). "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *Franco,* 2012 WL 5941801, at *18 (quoting *In re HPL Tech., Inc. Sec. Litig.,* 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005)). The lodestar multiplier, which is the ratio of the proposed percentage fee to the computed lodestar fee, is assessed for reasonableness. *Id.*

Here, Plaintiff's Counsel calculates that their fees under the lodestar method would be $85,265.00. (Leiman Decl. ¶8; Ex. 3.) That amount is based on 283.2 hours of billable work recorded to date, and includes the anticipated expenditure of a total of 50 additional hours devoted to settlement administration, preparation of the Joint Motion for Final Approval of Amended Settlement, attendance at the Fairness Hearing, and post-approval file closing activities. Plaintiff's calculation is based on the following hourly rates: $325 for Alan J. Leiman; $275 for Drew G. Johnson, and; $175 for Stacy McKerlie (*Id.*) Because these hours are reasonable for a case of this magnitude, and the rates are reasonable in light of rates awarded in comparable matters in this District, Plaintiffs' lodestar should be accepted. Further, because the

multiplier sought (2.9) is within the typical range in the Ninth Circuit, the lodestar crosscheck supports Class Counsel's request for fees at 27.8% of the common fund.

### 1. Reasonable Hours Billed

The court calculating the lodestar must first determine whether the number of hours expended was reasonable. *Richardson*, 2016 WL 1366952, at *10 (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)). The hours billed should reflect the number of hours that would reasonably be billed to a private client. *Deaver*, 2015 WL 8526982, at *13 (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)). When the lodestar is used to cross-check a fee award, the court is not required to perform an "exhaustive cataloguing and review of counsel's hours." *Richardson*, 2016 WL 1366952, at *10.

Here, Plaintiff's Counsel billed 233.2 hours since they were retained by Plaintiff to investigate and prosecute her claims, and anticipate spending not less than an additional 50 hours to complete work on the case. Plaintiff's Counsel often work collaboratively, but make an effort to avoid duplicate billings for certain types of billing events, and some but not all attorney office conferences. In this case, Plaintiff's Counsel conducted a thorough pre-filing investigation and prepared and filed a detailed Complaint. (Leiman Decl. ¶9.) After filing the Complaint, the Parties negotiated and entered into a Tolling Agreement. (*Id.*) Even though Defendant did not dispute that Plaintiff's Counsel had discovered a regular rate computational error in Plaintiff's pay, Plaintiff's Counsel had to engage Defendant for over four months until Defendant had provided sufficient data from which Plaintiff's counsel could reasonably conclude that the error was limited to the seven-month period that Defendant was claiming. (*Id.*) Plaintiff's Counsel spent time: analyzing Defendant's personnel policies, compensation and bonus plans, and payroll data; researching and assessing legal and factual issues for settlement; assessing potential claims and defenses, and; drafting a detailed substantive mediation statement. (*Id.*) Plaintiff's Counsel also prepared for and participated in the mediation, and spent over four additional months continuing to negotiate and draft the settlement agreement. Plaintiff's Counsel will also need to

draft the Joint Motion for Final Approval, the Judgment, and continue with settlement administration and responding to issues as they arise. These myriad tasks are necessary to prosecute Plaintiff's claims and would be appropriate in any private litigation, especially complex wage and hour matters.

### 2. *Reasonable Hourly Rate*

Attorneys' fees should be calculated according to the "prevailing market rates in the relevant community." *Rosales*, 2015 WL 4460635, at *24 (citing *Blum*, 465 U.S. at 895). For purposes of determining the prevailing market rate, the relevant community is the forum in which the district court sits. *Id.* (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). Evidence of prevailing market rates may be from a declaration from the attorney requesting the fee or other area attorneys, or examples from other awards in previous cases. *See Deaver*, 2015 WL 8526982, at *12.

Here, Plaintiff's Counsel's seek an hourly rate of $175 per hour for its Associate Attorney, $275 for its six-year level partner, and $325 for its 25-year level partner. (Leiman Decl., ¶8.) The majority of the hours billed, and thus the hourly rates most necessary for examination, were for Mr. Leiman, and for Mr. Johnson (See Leiman Decl., Ex. 3.) As mentioned, Mr. Leiman has 24 years of litigation experience, while Mr. Johnson has 6 years of legal experience and a Masters Degree in conflict resolution. Both Messrs. Leiman and Johnson have spent the last five years focusing their firm's practice on wage and hour class and collective litigation. (Leiman Decl., ¶12.) Given Plaintiff's Counsel's experience and specialty in wage and hour class and collective actions, their rates are consistent with those that courts have found reasonable for law firms that served as plaintiffs' counsel in other class actions in this district. *See Taylor v. Universal Auto Group I, Inc.*, C13-05245 KLS (W.D. Wash.) (Nov. 2015) (awarding fees based on rates of up to $650/hour); *Chesbro v. Best Buy Stores, L.P.*, C10-774 RAJ (W.D. Wash.) (Sept. 2014) (same); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326–27 (W.D. Wash. 2009) (awarding fees based on rates of up to $760/hour); *Global Educ.*

*Servs. v. Intuit, Inc.*, No. C09-944 RSL (W.D. Wash. 2011) (same); *Gardner v. Capital Options, LLC et al.*, No. C07-1918 (W.D. Wash. 2009) (same); *Zwicker v. Gen. Motors Corp.*, No. C07-0291 JCC (W.D. Wash. 2008) (awarding fees based on rates of up to $650/hour).

The reasonableness of Plaintiff's Counsel's rates is further evidenced by the declaration of David A. Schuck, an attorney practicing Wage and Hour law in the District of Oregon. (*See* Leiman Decl., Ex. 2.) Mr. Schuck is a partner at Schuck and Associates, LLC in Vancouver, Washington, and a member of the Oregon State Bar whose practice has included litigating hundreds of wage and hour class and collective cases. (*Id.*) Based on his experience in similar wage cases in this forum, a reasonable hourly rate for partner-level class counsel is between $275 and $425 while a reasonable hourly rate for an associate is between $175 and $225. (*Id.*) Plaintiff's Counsel's hourly rates are within these ranges, further supporting their rates are reasonable.

### 3. *Lodestar Multiplier*

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Franco*, 2012 WL 5941801, at *21 (quoting *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002)). The court awarding attorneys' fees has discretion to apply a multiplier to the fee calculation to compensate for the risk of nonpayment. *Id.* "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Miller*, 2015 WL 4730176, at *9.

The 27.8% requested from the common fund is equal to Plaintiff's lodestar with an approximate 2.9 times multiplier and is comparable or lower than multipliers approved in other class actions. *See Steiner v. Am. Broadcasting Co., Inc.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving multiplier of 6.85); *Vizcaino,* 290 F.3d at 1051–52 (affirming fee award with a lodestar multiplier of 3.65 and citing cases with comparable or higher multipliers); *Craft*, 624 F. Supp. 2d at 1125 (approving percentage of the fund equal to 5.2 lodestar multiplier); *Van*

*Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding attorneys' fees under percentage method where lodestar multiplier equaled between 2.4 and 3.6). Given the significant recovery relative to the actual damages and the risks Plaintiff's Counsel undertook in this litigation, this multiplier is more than reasonable.

## II.    THE COURT SHOULD APPROVE THE REQUESTED EXPENSES

Taxable costs are available to the prevailing party and governed by 28 U.S.C. § 1920 and Federal Rules of Civil Procedure Rule 54. *Rosales*, 2015 WL 4460635, at \*32. "Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Id.* (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Under the terms of the Settlement Agreement, Plaintiffs' Counsel is requesting approval of $24,000 in settlement administration costs. (Leiman Decl. ¶10, Ex. 4.) This is the amount specified in the Amended Settlement, and the amount being charged by JND Class Action Administration, Inc. ("CAA"), the third-party settlement administrator retained by Plaintiff's counsel to administer the settlement. This amount is consistent with costs awarded in wage and hour matters, and payment of these costs is already factored into the allocation, which has been communicated to Plaintiff. *See, e.g.*, *Rosales*, 2015 WL 4460635, at \*32 (approving costs of $36,620.54 in unpaid wages case); *Barbosa*, 297 F.R.D. at 454 (finding costs of $32,722.74 for travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges). Plaintiffs' Counsel requests, and Defendant does not oppose, reimbursement of $24,000 in settlement administration costs.

## III.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD

A District Court at its discretion may award an incentive payment to the named plaintiff(s) in a FLSA collective action to compensate them for work done on behalf of the class. *See, Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1181 (S.D. CA 2016). "In reviewing whether an incentive award is appropriate, the court should consider among other things, 'the actions the plaintiff has taken to protect the interests of the class, the

degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id. citing Staton,* 327 F.3d at 977 (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Plaintiff Shawna Bell contributed considerable time and effort and personal resources towards the settlement that was reached in this case. Before the case was filed, Plaintiff provided the documentation that allowed her counsel to discover the regular rate computational error on which the case was brought. (Leiman Decl. ¶11.) Plaintiff assisted with the preparation and review of the Complaint before it was filed. (*Id.*) During the approximately 4.5 month period between filing and the mediation, during which time Defendant provided data and documentation to Plaintiff's counsel for review and analysis, Plaintiff assisted her counsel by answering questions about incentive pay, bonuses, and other issues that were being evaluated. (*Id.*) Plaintiff traveled a considerable distance at her own expense to attend an all day mediation in Portland. Plaintiff was an active participant at the mediation, where she acted as an advocate for the employees and did not appear to be acting in her own self-interest. (*Id.*). In the over four months the Parties spent negotiation the written settlement agreement after the mediation, Plaintiff would contact her counsel for updates, and she reviewed the settlement agreement and asked questions about it before she signed it. (*Id.*) The incentive award of $2,500 requested by Plaintiff is reasonable and should be approved.

## CONCLUSION

Plaintiff's requested attorneys' fees, costs of settlement administration, and requested incentive award are reasonable in light of the favorable settlement obtained, the risks associated with pursuing the case, and the time and expenses incurred to bring about a settlement. The Court should approve Plaintiff's motion for attorneys' fees and costs in its entirety.

DATED January 20, 2017.

Respectfully submitted,

_/s Alan J. Leiman_____
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.: 980746
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiff

_/s Drew G. Johnson_____
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.: 114289
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiff