Alan J. Leiman (OSB No. 980746)
Drew G. Johnson (OSB No. 114289)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR  97401
alan@leimanlaw.com
drew@leimanlaw.com

Francis T. Barnwell (OSB No. 841623)
Kathryn M. Hindman (OSB No. 882261)
BULLARD LAW
200 SW Market St Ste 1900
Portland, OR  97201
fbarnwell@bullardlaw.com
khindman@bullardlaw.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **SHAWNA BELL,** individually and on behalf of all others similarly situated, | **CASE NO**.:  3:15-cv-00941-SI |
| Plaintiff, | **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| **CONSUMER CELLULAR, INCORPORATED,** an Oregon Domestic Business Corporation, | |
| Defendant. | |

## CERTIFICATION OF CONFERRAL

Pursuant to L.R. 7-1(a), the parties have conferred and this Joint Motion for Final

Approval of Class Action Settlement is filed jointly on behalf of Plaintiff and Defendant

pursuant to the Settlement Agreement filed previously.  (Dkt.20-3).

## MOTION

Plaintiff and Defendant jointly move this Court for an Order granting:

a) Final approval of the settlement as it is fair, reasonable, and adequate to members of the Settlement Class; and,

b) Approval of the Settlement class consisting of the Oregon Current and Former Employee Subclasses, and the Arizona Employee Subclass.

c) Approval of Class Counsel's Motion for Attorneys' Fees, Incentive Award and Costs of Settlement Administration (Dkt. 24.)

This Motion is supported by the Memorandum of Law and the Declarations of Alan J. Leiman and Matthew McDermott, and the Exhibits filed herewith.

DATED: April 6, 2017             Respectfully submitted,

/s Alan J. Leiman
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.:  98074
44 W. Broadway, Suite 326
Eugene, OR  97401
Telephone: (541) 345-2376
Facsimile:  (541) 345-2377
Of Attorneys for Plaintiff

/s Drew G. Johnson
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.:  114289
44 W. Broadway, Suite 326
Eugene, OR  97401
Telephone: (541) 345-2376
Facsimile:  (541) 345-2377
Of Attorneys for Plaintiff

/s Francis T. Barnwell
Francis T. Barnwell
Email: fbarnwell@bullardlaw.com
Oregon State Bar No. 841623
Bullard Law
200 SW Market St Ste 1900
Portland, OR 97201
Telephone: (503) 248-1134

Facsimile: (503) 224-8851
Of Attorneys for Defendant


/s Kathryn M. Hindman
Kathryn M. Hindman
Email: khindman@bullardlaw.com
Oregon State Bar No. 882261
Bullard Law
200 SW Market St Ste 1900
Portland, OR 97201
Telephone: (503) 248-1134
Facsimile: (503) 224-8851
Of Attorneys for Defendant

Alan J. Leiman (OSB No. 980746)
Drew G. Johnson (OSB No. 114289)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR  97401
alan@leimanlaw.com
drew@leimanlaw.com

Francis T. Barnwell (OSB No. 841623)
Kathryn M. Hindman (OSB No. 882261)
BULLARD LAW
200 SW Market St Ste 1900
Portland, OR  97201
fbarnwell@bullardlaw.com
khindman@bullardlaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SHAWNA BELL,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**CONSUMER CELLULAR, INCORPORATED,** an Oregon Domestic Business Corporation,<br><br>    Defendant. | **CASE NO**.:  3:15-cv-00941-SI<br><br>**Memorandum in Support of Joint Motion for Final Approval of  Class Action Settlement** |

**PROCEDURAL AND FACTUAL HISTORY**

**I.    LITIGATION, SETTLEMENT, AND PRELIMINARY APPROVAL**

In May, 2015, Plaintiff Shawna Bell filed a collective and class action Complaint in the United States District Court for the District of Oregon, alleging that Defendant failed to properly pay her and other similarly situated "Customer Service

1 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Representatives" ("CSR's") the correct amount of overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA") and Oregon state wage and hour laws. (Dkt. 1.)  The Complaint alleged that Defendant failed to include non-discretionary incentive pay and bonuses in the computation of the regular rate of pay for purposes of computing overtime.  (*Id.*, ¶ 2.)  Defendant answered by acknowledging that from approximately September 2014 to March 2015 a payroll system error may have resulted in an overtime computation that did not include additional compensation earned in the regular rate used to calculate overtime pay of Defendant's CSR's.  (Dkt. 13, ¶ 17.) Defendant maintains that it acted in good faith to comply with the FLSA, that it had reasonable grounds for believing it was in compliance with the FLSA, and that it did not act willfully.  (Id., ¶¶ 77, 78, 79.)

Shortly after the action was filed the parties began exchanging information and discussing settlement.   Plaintiff requested, and Defendant provided, discovery that addressed both the scope of the regular rate computational problem (potential liability), and the number of current and former employees impacted (scope of Settlement Class). (Declaration of Alan J. Leiman ("Leiman Decl."), ¶ 3.)  Defendant produced time and pay records relating to the time period for which the regular rate computational  error was not being disputed, and records from before and after to demonstrate the limited durtation of the computational error. (*Id.*, ¶ 4.)  The discovery provided adequately demonstrated the size of the class and the alleged amount of unpaid FLSA overtime in dispute relating to the approximate seven-month regular rate computation error.

The Parties participated in a mediation in January 2016 with the Honorable Susan Leeson and Richard "Sam" Hall at which a preliminary settlement was reached.   The parties prepared and submitted the proposed Settlement for review and prelimnary approval by the Court.  (Dkt. 17.)  Following the Court's Order denying preliminary approval (Dkt. 19), the parties renegotiated and submitted an Amended Settlement for the

Courts preliminary approval (Dkt. 20.) The Court granted the Parties' motion and preliminarily approved the proposed settlement as fair, reasonable, and adequate (the "Settlement"). (Dkt. 23.) The Court's Order also determined that the Settlement Class satisfied the requirements of FRCP 23, appointed Alan J. Leiman and Drew G. Johnson as Class Counsel, appointed Class Action Administration, LLC as settlement administrator, approved the Settlement Class Notices for distribution, and required that notice of the proposed settlement be mailed and posted on the web. (*Id.*)

There were a total of 728 individual current and former employees of Defendant who were included in the Settlement Class preliminarily certified by the Court. The Settlement Class is divided into three subclass designations as follows: (i) Oregon Current Employee Subclass consisting of 299 individuals; (ii) Oregon Former Employee Subclass consisting of 197 individuals; and, (iii) Arizona Employee Subclass consisting of 232 individuals.

The settlement administrator mailed the Court-approved notices to the 728 Rule Rule 23 Settlement Class members on December 30, 2016. (Declaration of Matthew McDermott ("McDermott Decl."), ¶ 6.) On or before mailing of the Notice Packets on December 30, 2016, the settlement administrator established a dedicated informational website on which copies of the Notice, Claim Form, Settlement, and the Preliminary Approval Order were posted, and which provided contact information, including a toll-free phone number and email for the settlement administrator. (*Id*, ¶ 9.) On January 20, 2017, two weeks prior to the deadline for class members to object to the Settlement, Plaintiff's Motion for Attorneys' Fees, Incentive Award and Costs of Settlement Adminstration (Dkt. 24) was posted on the dedicated website. (*Id.*)

The settlement administrator reports having received a total of 365 non-duplicate Claim Forms representing a return rate of approximately 50.1%. Of the 365 non-duplicate Claim Forms received, 342 were complete and postmarked on or before the

3 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

Class Member's personalized response deadline. (*Id.*, ¶ 16.) Only 2 individuals submitted a timely request for exclusion from the settlement. (*Id.*, ¶ 13.) Notably, no Rule 23 Settlement Class Members objected to the Settlement. (*Id.*, ¶ 11.)

## II.    SETTLEMENT ALLOCATION

The Parties agreed to settle the claims for all members of the Settlement Class for up to $900,000.00 ("Gross Settlement Amount"). (Dkt. 20-3.) After deducting the requested attorneys' fees of $250,000.00 (27.8% of the Gross Settlement Amount), the requested settlement administration expenses of $24,000.00, and the requested Incentive Award to Plaintiff of $2,500.00[1], the resulting net settlement fund of $626,000.00 is available to fund the settlement payments to the Settlement Class Members who returned valid and timely claim forms, and pay the non-participating eligible members of the two Oregon subclasses pursuant to the terms of the Settlement.

Out of the 728 Notice Packets mailed, the settlement administrator tracked 65 packets that had been returned as not deliverable. (McDermott Decl., ¶ 7.) After using USPS forwarding addresses, and after researching addresses using skip-trace databases, a total of 685 Class Members were mailed Notice Packets without all attempts being returned as undeliverable representing 94% of the Settlement Class mailing list. (*Id.*)

Of the 299 Class Members who were designated as members of the Oregon Current Employee Subclass, 170 Class member returned valid and timely Claim Forms representing $149,600.00 in benefits. (McDermott Decl., ¶ 18.) With one member of the subclass opting out, Defendant will pay the remaining 128 Oregon Current Employee subclass members who did not respond to the Notice $35 each for a total of $4,480.00, for a total of $154,080.00 in payments to the Oregon Current Employee Subclass. (*Id.*)

Of the 197 Class Members who were designated as members of the Oregon Former Employee Subclass, 114 Subclass members returned valid and timely Claim

---

[1] All pending Court approval (Dkt. 24).

4 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Forms, representing $202,418.00 in benefits. (*Id*.)  With one member of the subclass opting out, Defendant will pay the remaining 82 Oregon Current Employee subclass members who did not return valid and timely Claim Forms $35 each for a total of $2,870.00, for a total of $205,288.00 in payments to the Oregon Former Employee Subclass. (*Id*.)

Of the 232 Class Members who were designated as members of the Arizona Employee Subclass, 58 Class members returned valid and timely Claim Forms, representing $3,511.58 in benefits. (McDermott Decl., ¶ 18.)[2]

Cumulatively, Defendant is expected to pay $362,879.58  to Class Members, representing 57% of the total of the net settlement funds allocated for that purpose.  The reversion is appropriate for the reasons set forth in the Parties' Joint Motion for Preliminary approval.  (Dkt. 20, pp. 11-18.)   The Settlement resulted from a negotiated and hard fought mediation and does not show self-interest or collusion of Class Counsel. In addition, because Defendant has (a) paid the actual overtime owed to then current employees who were employed when the regular rate computation was corrected; (b) the amount of the actual unpaid overtime was relatively low; (c) the value of the Settlement is driven by ORS 652.150 penalty wages which already serve as a deterrent; and (d) entitlement to class treatment of Oregon penalty wages is highly disputed by the parties – reversion is proper, fair, and appropriate.  The Settlement allocations are specified in Exhibits B, C and D to the Dageforde Declaration filed herewith.

## ARGUMENT

### I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

In granting preliminary settlement approval, this Court preliminarily approved the

---

[2] Pursuant to the Settlement, non-participating Arizona Employee Subclass members do not release any rights or remedies under the FLSA or Arizona law and do not receive a settlement benefit.

proposed settlement as fair, reasonable and adequate. (Dkt. 23.) Since preliminary approval, notice has been distributed with the response rates as set forth above, with two requests for exclusion and zero objections. The settlement will distribute considerable payments to Settlement Class Members, which represent good and fair value for the claims, particularly in light of the relatively low actual damages, and when compared with the uncertainty and risk of continued litigation. This Court should find, once again, that the Settlement is fair, adequate, and reasonable and approve the Settlement so that participating Settlement Class Members and non-responding Oregon Current and Former Subclass Members may receive their settlement payments.

### A.  The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). Additionally, in cases where settlement occurs before formal class certification, courts must consider whether the settlement is a result of collusion among the parties. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). As outlined below, these factors support final approval of the settlement.

### 1.  Strength of Plaintiffs' Case

This factor examines the strength of a plaintiff's case on the merits balanced against the amount offered in the settlement. *Ontiveros v. Zamora*, 303 F.R.D. 356, 369

(E.D. Cal. 2014).  But the "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the task for this court is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Instead, the court may "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."  *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Plaintiff alleged that Defendant did not properly compute FLSA overtime as a result of a regular rate computational error involving non-discretionary incentive and bonus pay.  Even though for settlement purposes Defendant is not disputing that it made an approximately seven-month payroll error that resulted in the underpayment of FLSA overtime, Plaintiffs still believe they would face significant challenges establishing that members of the Oregon Current and Former Employee Subclasses were entitled to an ORS 652.150 "Final Paycheck" wage penalty, and that Rule 23 class certification on that issue could be maintained.  Defendant asserts that the Settlement was driven by this highly disputed alleged entitlement to the penalty wages specified in ORS 652.150.  (Dkt. 20, p.12.) Assuming liability would be established, the amount of actual unpaid overtime resulting from the seven-month regular rate computational error was relatively low and had previously been paid to Class Members who were employed when Defendant corrected the error. (*Id*., pp. 5, 11.) Plaintiff would also have to establish that Defendant willfully violated Oregon law, something Defendant denies, to recover Oregon penalty wages for the two Oregon subclasses.  Defendant also raised a good faith argument against FLSA liquidated damages. Thus, even if Plaintiff established liability, and could overcome objections that would bar class treatment, these defenses could greatly reduce Plaintiff's recovery.

7 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff maintains her strong belief in the merits of the case, and has reached a resolution that recognizes the potential difficulties she would face in continued litigation. Particularly in complex employment class action litigation, voluntary settlement is the preferred means of dispute resolution. *Officers for Justice*, 688 F.2d at 625. While the Court must review the fairness and reasonableness of the settlement, that determination is, ultimately, "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotations omitted). The proposed settlement balances the strengths and weaknesses of the Parties' positions on class treatment, liability, and damages, while providing significant recovery for Settlement Class Members. This factor weighs in favor of settlement approval.

### 2. Risk, Expense, Complexity and Likely Duration of Further Litigation

The central consideration for this factor is the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

Once it became clear that Defendant could demonstrate that the regular rate computational error that formed the basis for Plaintiff's claims was of a limited duration, the settlement value of the case in large part became driven by the issue of whether the Oregon Current Employee and Former Employee Sublcasses were entitled to ORS 652.150 penalty wages. Prior to the mediation, the Parties engaged in a significant amount of informal, confidential discovery in order to demonstrate: (1) the seven-month duration of the payroll error; (2) that Defendant re-computed the overtime owed following discovery of the regular rate computational error and paid employees who were employed at that time their actual re-computed overtime; and (3) that Defendant had propery included the non-discretionary incentive pay and bonuses in its regular rate calculations both before and after the seven-month period. Had this case not settled, the

8 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Parties would have engaged in significant additional discovery (the preliminary discovery was subject to having to be re-requested) and there would have been motions for conditional certification of the FLSA Class, certification of the Rule 23 Class, likely cross-motions on summary judgment, and Defendant's presumptive motions to decertify the FLSA and, if granted, Rule 23 classes.   These litigation steps would have been expensive, complex, and protracted.   This settlement avoids these expenditures of resources for all parties and the Court, and provides "significant benefit that [Settlement Class Members] would not receive if the case proceeded—certain and prompt relief." *See Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013).   This factor supports final approval of the settlement.

### 3.   Risk of Maintaining Class Action Status Through Trial

Although certification of the FLSA collective class claim was probable as a result of the FLSA regular rate computational error, Plaintiff faced legitimate risk that she would not be able to certify and maintain a Rule 23 Class for the Oregon employees. The most obvious risk Plaintiff faced was whether a Rule 23 class would be certified at all. Even assuming Plaintiff prevailed on class certification, Plaintiff still faced decertification on both classes, as Defendant claimed that Plaintiff's claims suffered from multiple issues making class or collective treatment inappropriate, and that Oregon rules relating to pre-conditions for class treatment applied and precluded class treatment of the Oregon wage penalty claims.

Even if Plaintiff had achieved and maintained the FLSA collective class and an Oregon Rule 23 state law class through trial, she still would have faced the risk that the matter would be decertified.  Under Rule 23, a court may revisit class certification at any time before final judgment.  Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"); Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment ("A determination of liability

after certification, however, may show a need to amend the class definition. Decertification may be warranted after further proceedings.").  As a result, it is possible that any state law classes could have been decertified or modified before the conclusion of trial.  *Mazzei v. Money Store*, 2016 WL 3876518, at *3 (2d Cir. July 15, 2016) (affirming decertification of Rule 23 class following jury verdict).

Plainitff recognizes the multiple risks in proceeding with the litigation.  Resolving the case now guarantees recovery for the participating Settlement Class members, and the non-paticipating Oregon Current Employee and Former Employee Subclass members and weighs in favor of approving the settlement.

### 4.  Amount of Settlement Offered

When considering the fairness and adequacy of a settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros*, 303 F.R.D. at 370 (quoting *DIRECTV*, 221 F.R.D. at 527) (internal quotations omitted).  "It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

Here, based on the actual number of valid and timely Claim Forms returned, the proposed Settlement provides $362,879.58 (exclusive of attorneys' fees, costs, and incentive payments pending approval by the Court) to be distributed to the participating Settlement Class Members, and the non-participating Oregon Current and Former Employee Subclasses.

Arizona Employee Subclass members will receive the amount of their actual re-computed overtime, or $50 whichever is greater.  The average recovery for the 52 Arizona Employee Subclass members who returned valid and timely Claim Forms is $60. Arizona Empoyee Subclass members who did not return a Claim Form are not releasing any rights under the FLSA or Arizona law pursuant to the Settlement and will not receive

any benefit.

The Settlement provides for different recoveries for the Oregon Subclasses in recognition of greater uncertainties surrounding the entitlement of the Oregon Current Employee Subclass to any or all of a 240-hour ORS 652.150 wage penalty.  While the entitlement of the Oregon Former Employee Subclass members to this penalty is more likely, those subclass members still face uncertainties from Defendant's challenges to entitlement to any or all of an ORS 652.150 penalty because of Defendant's claim that it did not act willfully, and its claim that Plaintiff failed to comply with Oregon's pre-litigation class action notice requirements.

In recognition of these uncertainties, Oregon Current Employee Subclass members who returned valid and timely Claim Forms will each receive a total of $880 in settlement of FLSA and Oregon claims.  This amount is greater than the highest re-computed individual amounts of actual FLSA overtime for members of the Settlement Class.  Participating Oregon Former Employee Subclass Members whio returned valid and timely Claim Forms will each each receive $1,791.00 in settlement of FLSA and Oregon claims.  Oregon Current and Former Employee Subclass members who did not opt-out (2 opt-outs total) will receive $35 and release Oregon claims but will not release any FLSA claims.  The Settlment provides a fair recovery.  The actual amount of overtime at issue for the 727 putative Settlement Class Members ranged from $.02 to $822, with the next closest amount at $360, and that 646 of the Settlement Class members had actual overtime amounts at issue under $25.  (Dkt. 20, p. 6.)  There were no objections to the settlement, and only two opt-outs, confirming that the settlement amount is fair and adequate.  *See Barbosa*, 297 F.R.D. at 447 (noting that the lack of objections and single request to opt-out of agreement showed class member support of settlement). As such, this factor supports approving the proposed settlement.

### 5.  *Extent of Discovery Completed and Stage of Proceedings*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. Formal discovery is not required prior to a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239–40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The Court and the parties may also rely on  discovery developed in prior or related proceedings. *Linney*, 151 F.3d at 1239–40.

The Parties obtained sufficient discovery to assess the claims and defenses in this case. The FLSA violation at issue was a regular rate computational error that resulted from Defendant's non-inclusion of certain non-discretionary incentive and bonus pay in computing the regular rate used to compute the correct FLSA overtime rate. As a pre-condition to mediation, Plaintiff required Defendant to produce sufficient documentation in order to demonstrate the truthfulness of Defendant's claim that the discovered error was limited to an approximate seven-month period, and that impacted employees still employed by Defendant when the error was discovered were paid their actual re-computed overtime. Defendant provided data demonstrating that the FLSA regular rate computational error claimed by Plaintiff was limited to an approximate seven-month period between September 2014 and March 2015 and that it recomputed and paid actual overtime to then still employed impacted employees. (Dkt. 20, pp. 16-17.)

Additionally, the Parties' use of mediation after conducting discovery, and the additional exchanges of information that took place during and after the mediation, assured there was more than adequate information for the Parties to understand their cases and reach a reasonable settlement. This supports the finding that the settlement is fair and adequate.

### 6. *Experience and Views of Counsel*

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal citations and quotations omitted).  Absent fraud or collusions, courts can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa*, 297 F.R.D. at 447 (citing *DIRECTV*, 221 F.R.D. at 528.)

Class Counsel's experience is outlined in Plaintiff's Motion for Attorneys' Fees, Incentive Award and Settlement Administraton Costs (Dkt. 24.)  As noted there, Class Counsel have extensive experience in wage and hour litigation.  Counsel for all parties agree that the settlement is fundamentally fair, adequate, and reasonable.  This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiff and Defendant, facilitated by a skilled mediator, after thorough factual and legal investigation.  This factor weighs in favor holding the settlement is fair and reasonable.

### 7. *Presence of a Government Participant*

No government entity participated in this case, but the Attorney Generals of the United States, Arizona, and Oregon were provided notice under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  (Leiman Decl. ¶ 5.) Unfortunately, Defendant did not send the CAFA notices until March 19, 2017, 40 days prior to the April 28, 2017 scheduled date of the Final Approval Hearing, leaving a 50 day period for government objection following the hearing. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *1 (N.D. Cal. Apr. 22, 2010). The 90-day CAFA period ends on June 19, 2017. The Proposed Order granting final approval of the Settlement provides for Defendant to fund the Settlement by forwarding the required funds to the settlement administrator by June 21, 2017, 1 day after the Order.   The Parties will ask the Court to enter an Order providing "this Order becomes final on June 20, 2017, unless a government objection is received in which case it shall be withdrawn and the matter reconsidered", or in the alternative to enter the Order on June 20, 2017.  To minimize the impact of the delay of providing the CAFA notices, the Parties propose to advance the date for disbursements to Class Members to the 36th day following the entry of the final approval Order barring no appeals.

### 8.  *Reaction of the Settlement Class Members to the Proposed Settlement*

The reaction of the settlement class strongly supports approval.  Of the 693 Notice Packets that were mailed to Settlement Class Members and not returned as undeliverable, no one objected and only two individuals sought to exclude themselves from the Settlement.  With responses received from 344 of the 693 Settlement Class Members presumed to have received the Notice Packet (50.1%), this high rate of participation, when combined with the lack of any objections to the settlement agreement, weighs heavily in favor of final approval.  *DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.")

### 9.  *Evidence of Collusion*

Courts considering a pre-class certification settlement must examine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *Bellinghausen*, 306 F.R.D. at 258.   The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the

14 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) when the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* (citing in *In re Bluetooth*, 654 F.3d at 947). In their Renewed Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. 20, pp. 11-18), the Parties addressed these factors in detail in response to the Court's prior rejection of the Settlement. None of these factors support denying approval in this case.

First, the settlement is a "claims made" common fund with Class Counsel seeking 28.7% of the maximum total fund for attorneys' fees.[3] Because of the provision for reversion, it was necessary to wait until the final Class Member Response could be timely received before computing Defendant's actual obligation to fund the Settlement. Since there was no way to accurately anticipate particpation rates, it is only now that the reasonableness of Class Counsel's fee request can be measured against the amount Defendant will actually pay in settlement. As set forth in Section II above, Defendant's obligation stands at paying a total of $362,879.58 to Class Members. This approach results in Settlement Class Members receiving approximately 44% more than Class Counsel's fee request. Defendant is also obligated to pay the costs of settlement administration and an Incentive Award to Plaintiff. Greater participation would have increased the spread between the requested fees and the amounts paid to the Settlement Class Members, but at close to 50% the response rate was reasonable.

Second, the fact that the Parties agreed to a "clear sailing" provision where Defendant would not object to the Class Counsel's request for attorneys' fees does not warrant denying final approval. *See Deaver v. Compass Bank*, 2015 WL 8526982 at *9

---

[3] At the mediation, Plaintiff's Counsel voluntarily reduced the one-third contingency fee specified in its fee agreement with Plainitff by $50,000.00 in order to increase the amount of funds available to settle the claims of the Settlement Class Members by that amount, and Defendant agreed to the request.

15 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(N.D. Cal. Dec. 11, 2015) (approving settlement despite presence of "clear sailing" term in settlement agreement). The Settlement provides that the Court's approval of attorneys' fees is separate from approval of the Settlement as it relates to the Settlement Class Members. (Dkt. 20-3, ¶ 5.4.4.)

Third, although the Settlement provides for reversion the Parties have demonstrated that several factors support reversion in this case and that it is not the product of collusion. Actual FLSA overtime damages were low. After subtracting what Defendant had paid outside the litigation to putative Settlement Class Members, approximatey $2,431.31 remained unpaid, exclusive of FLSA liquidated damages and penalties. (Dkt. 20, p.11.). As noted, the individual overtime underpayment ranges from $.02 to $822, with the next closes underpayment at $360, and the average amount of unpaid overtime $11.84. (*Id*., p. 12.) The recoveries provided for in the Settlement are substantially greater than the actual underpaid FLSA overtime which supports reversion. The Settlement was driven by a highly disputed alleged entitlement of the Oregon Current and Former Employee Sublcass Members to ORS 652.150 penalty wages. (*Id*.)

Additionally, the manner of settlement itself supports the lack of fraud or collusion. The Parties only reached an agreement after a long day of working with the neutral mediators. It took an additional five months following the mediation to reach an agreement, which was then further negotiated following the Court's initial denial. *See, Bluetooth*, 654 F.3d at 948 (holding that participation of a mediator, while not dispositive, is "a factor in favor of a finding of non-collusiveness").

## II.    THE SETTLEMENT CLASS.

The Court previously granted preliminary approval that for settlement purposes the Settlement Class satisfied the requirements of FRCP 23. (Dkt. 23.) For the same reasons provided in the Parties Joint Motion for Preliminary Approval (Dkt. 20), and as set forth herein, the Court should reconfirm that the Settlement meets the requirements of

Rule 23.

## CONCLUSION

This settlement is the product of an arms-length negotiation between the Parties and their counsel, which resolves a *bona fide* dispute over alleged unpaid overtime wages and penalty wages.  The settlement is fair, reasonable and adequate, and provides Settlement Class Members with significant monetary relief.  Accordingly, the Parties jointly and respectfully request that this Court approve of the Parties' settlement agreement, and enter the Parties' proposed Order providing for: (1) final approval of the settlement as fair, reasonable, and adequate as to the members of the Rule 23 Settlement Class; (2) approval  that the Settlement Class meets FRCP 23 requirements ; and (3) approval of Class Counsel's Motion for Attorneys' Fees, Incentive Award, and Costs of Settlement Administration (Dkt. 24.)

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word-count limit under LR 7-2(b) because it contains fewer than 18 pages.


DATED: April 6, 2017                    Respectfully submitted,

                                        /s Alan J. Leiman
                                        Alan J. Leiman
                                        E-mail: alan@leimanlaw.com
                                        Oregon State Bar No.:  98074
                                        44 W. Broadway, Suite 326
                                        Eugene, OR  97401
                                        Telephone: (541) 345-2376
                                        Facsimile:  (541) 345-2377
                                        Of Attorneys for Plaintiff



                                        Signatures Continue Next Page

/s Drew G. Johnson
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.:  114289
44 W. Broadway, Suite 326
Eugene, OR  97401
Telephone: (541) 345-2376
Facsimile:  (541) 345-2377
Of Attorneys for Plaintiff

/s Francis T. Barnwell
Francis T. Barnwell
Email: fbarnwell@bullardlaw.com
Oregon State Bar No. 841623
Bullard Law
200 SW Market St Ste 1900
Portland, OR 97201
Telephone: (503) 248-1134
Facsimile: (503) 224-8851
Of Attorneys for Defendant

/s Kathryn M. Hindman
Kathryn M. Hindman
Email: khindman@bullardlaw.com
Oregon State Bar No. 882261
Bullard Law
200 SW Market St Ste 1900
Portland, OR 97201
Telephone: (503) 248-1134
Facsimile: (503) 224-8851
Of Attorneys for DefendanT

18 – MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT