# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHAWNA BELL,** individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>     v.<br><br>**CONSUMER CELLULAR, INCORPORATED,** an Oregon Domestic Business Corporation,<br><br>       Defendant. | Case No. 3:15-cv-941-SI<br><br>**OPINION AND ORDER** |

Alan J. Leiman and Drew G. Johnson, LEIMAN & JOHNSON, LLC, 44 W. Broadway, Suite 326, Eugene, OR 97440. Of Attorneys for Plaintiff.

Francis T. Barnwell, Kathryn M. Hindman, and Liani Jeanheh Reeves, BULLARD LAW, 200 SW Market Street, Suite 1900, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This is a class action under Federal Rule of Civil Procedure 23 brought by Plaintiff

Shawna Bell ("Plaintiff" or the "Class Representative") individually and on behalf of current and

former employees of Defendant Consumer Cellular Incorporated ("Consumer Cellular").

Plaintiff alleges that Consumer Cellular failed properly to pay her and others the correct amount

of overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and Oregon wage and hour laws. Before the Court is the parties' Joint Motion for Settlement and Plaintiff's Motion for Attorney's Fees. The Court has considered the motions, the proposed Settlement Agreement, the papers submitted in connection with both motions, the arguments of counsel, the response of the Settlement Class to the Notice of Class Action Settlement ("Class Notice"), and the files, records, and proceedings in the above-captioned action ("Action"). The final approval hearing was held on April 28, 2017. For the following reasons, the parties' Joint Motion for Settlement and Plaintiff's Motion for Attorney's Fees are granted. Class Counsel is awarded attorney's fees in the amount of $250,000 and costs in the amount of $24,000. The Class Representative is awarded $2,500 as an incentive award.

## STANDARDS

Federal Rule of Civil Procedure 23(e) provides, in part, that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." When a district court evaluates a class action settlement under Rule 23(e), the court must determine whether the settlement is fundamentally fair, reasonable, and adequate. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id.*; *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:4 (12th ed. 2015) ("In the context of reviewing a proposed class action settlement, the district court has a special duty to act as guardian for the interests of absent class members because they are not present but will be bound by the disposition of the case.").

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "But where, as here, class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but

also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). "In such a case, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

## BACKGROUND

On May 30, 2015, Plaintiff filed a collective and class action Complaint in this Court alleging that Consumer Cellular failed properly to pay her and other similarly situated customer service representatives ("CSRs") the correct amount of overtime pay in violation of the FLSA and Oregon state wage and hour laws. Specifically, Plaintiff alleged that Consumer Cellular did not include non-discretionary incentive pay and bonuses in the computation of the regular rate of pay for the purposes of computing the overtime rate. In its Answer, Consumer Cellular conceded that a payroll system error that occurred from approximately September 2014 until March 2015 may have resulted in the improper calculation of overtime pay for CSRs. Consumer Cellular, however, maintains that it acted in good faith to comply with the FLSA, had reasonable grounds for believing that it was in compliance with the FLSA, and did not act willfully.

In January 2016, the parties participated in mediation with the Honorable Susa Leeson and Richard "Sam" Hall and reached a preliminary settlement. On April 8, 2016, the parties filed a joint motion for preliminary approval. The Court denied this motion on May 31, 2016, identifying a number of issues, concerns, and deficiencies raised by the proposed settlement agreement. After the Court's denial of the first motion for preliminary approval, the parties participated in further negotiations and reached a new settlement (the "Amended Settlement"). On September 30, 2016, the parties filed a renewed joint motion for preliminary approval. The

Court granted this motion, preliminarily approving the Amended Settlement and Settlement Class; appointing Alan J. Leiman and Drew G. Johnson as class counsel; appointing Class Action Administration, LLC ("CAA") as settlement administrator; approving the settlement class notices for distribution; and requiring that notice of the Amended Settlement be mailed and posted on the web.

The parties propose a gross settlement amount (GSA) of $900,000 less requested attorney's fees of $250,000 (27.8% of the GSA), settlement administration expenses of $24,000, and an incentive award to Plaintiff of $2,500. Thus, the remaining Net Settlement Fund (NSF) is $626,000. The settlement provides for different award amounts for different subclasses of claimants as follows: (1) current Oregon employees will receive $880 each if they submit a claim form and $35 each if they do not; (2) former Oregon employees will receive $1,791 each if they submit a claim form and $35 each if they do not; and (3) current and former Arizona employees will receive $50 each or the amount of recomputed overtime if they submit a claim form and nothing if they do not. There are 299 current Oregon employees, 197 former Oregon employees, and 232 current and former Arizona employees. Thus, the Settlement Class contains 728 members (the "Settlement Class Members").

CAA mailed 728 notice packets to the Settlement Class Members and tracked 65 packets that had been returned as undeliverable. CAA re-mailed three of the returned notice packets to forwarding addresses provided by USPS and 19 of the returned notice packets to addresses found using skip-trace databases. In total, CAA mailed a notice packet to 685 class members, 94% of the total, without the packets being returned as undeliverable.

CAA received 342 properly completed claim forms before the deadline to respond, which is a response rate of 47%. Only two of the Settlement Class Members timely filed requests for

exclusion, and no member filed an objection. Of the 342 Settlement Class Members who submitted claim forms, 170 are members of the subclass of current Oregon employees and will receive a total of $149,600, 114 are members of the subclass of former Oregon employees and will receive a total of $204,174, and 58 are members of the subclass of current and former Arizona employees and will receive $3,511.58. Of the 384 Settlement Class Members who did not timely submit a claim form or a request for exclusion, 128 are members of the subclass of current Oregon employees and will receive a total of $4,480, 82 are members of the subclass of former Oregon employees and will receive a total of $2,870, and 174 are members of the subclass of current and former Arizona employees and will receive nothing. In total Consumer Cellular will pay $364,635.58 to class members, which is 58% of the NSF.

## DISCUSSION

**A.  Certification of the Settlement Class**

### 1.  Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure after the parties made certain amendments to the notice as requested by the Court. *See* ECF 19, 23. The Court is satisfied that the notice procedure was carried out according to the applicable standards. The Court finds that notice of the Amended Settlement was given to the Settlement Class by the best means practicable under the circumstances, including mailing the notice and claim form to the class members and posting the notice, claim form, settlement agreement, and preliminary approval order on a dedicated website.

The Notice provided Settlement Class Members with all required information including, among other things: (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Amended Settlement; (4) the requirement to submit a claim form and instructions as to how to do so and the deadline for

doing so; (6) a disclosure of the release of claims should Settlement Class Members choose to

remain in the Settlement Class; (7) an explanation of Settlement Class Members' opt-out rights,

the date by which Settlement Class Members must opt out, and information regarding how to do

so; (8) instructions about how to object to the Amended Settlement and the deadline for

Settlement Class Members to submit any objections; (9) the date, time, and location of the Final

Approval Hearing; (10) the internet address for the settlement website and the toll-free number

from which Settlement Class Members could obtain additional information about the Amended

Settlement; (11) contact information for the class counsel, the settlement administration, and the

court; and (11) information regarding how Class Counsel and the Class Representative would be

compensated. The Notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th

Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

948, 962 (9th Cir. 2009)).

    The form and method of notifying the Settlement Class fairly and adequately advised

Settlement Class Members of all relevant and material information concerning the Action and

the terms of the proposed Amended Settlement. The Court finds that the notice fully satisfies the

requirements of due process and Rule 23.

### 2. Final Certification

    The parties jointly move to resolve this case as a settlement class. In order to certify a

settlement class, the requirements of Federal Rule of Civil Procedure 23 must be satisfied. *See*

*Hanlon*, 150 F.3d at 1019. Rule 23 affords this Court with "broad discretion over certification of

class actions . . . ." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). A

plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity,

commonality, typicality, and adequacy of representation—and at least one subsection of Rule 23(b). *See, e.g.*, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). The parties agreed to certification of the class for settlement purposes, and the Court previously evaluated the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the Settlement. Having fully reviewed the record, the Court finds no reason to alter that assessment. Accordingly, the Court certifies for settlement purposes the following Settlement Class:

1.  The Arizona Subclass consisting of a total of 232 current and former employees of Consumer Cellular, Inc. who worked for Defendant between September 1, 2014 and March 31, 2015, and who allegedly earned overtime and non-discretionary incentive pay and/or bonus pay during that time period;

2.  The Oregon Current Employee Subclass consisting of a total of 300 current and former employees of Consumer Cellular, Inc. who were working for Defendant as of January 19, 2016, and who worked for Defendant between September 1, 2014 and March 31, 2015, and who allegedly earned overtime and non-discretionary incentive pay and/or bonus pay during that time period; and

3.  The Former Oregon Employee Subclass consisting of a total of 196 former employees of Consumer Cellular, Inc. who worked for Defendant between September 1, 2014 and March 31, 2015, and who allegedly earned overtime and non-discretionary incentive pay and/or bonus pay during that time period.

**B.  Settlement Agreement**

To approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane*, 696 F.3d at 818. The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of

a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A number of factors guide this review, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [sic], non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965.

Additionally, class action settlements involve "'unique due process concerns for absent class members' who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting *In re Bluetooth*, 654 F.3d at 946). Where the settlement agreement is negotiated before formal class certification, as in this case, the district court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) . . . ." *In re Bluetooth*, 654 F.3d at 946. Evidence of collusion may not be evident on the face of a settlement, and a court should consider whether there is evidence of more subtle signs of collusion. *Staton v. Boeing Co.*, 327 F.3d 938, 958 n.12, 960 (9th Cir. 2003). The Court reviews, in turn, the relevant factors bearing on the evaluation of whether the Amended Settlement is fair, reasonable and adequate.

## 1.  The Strength of Plaintiff's Case

This factor examines the strength of a plaintiff's case on the merits balanced against the amount offered in the settlement. *Ontiveros v. Zamora*, 303 F.R.D. 356, 369 (E.D. Cal. 2014). The "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the

court is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The parties state that the settlement agreement was driven by Plaintiff's claim for penalty wages under Or. Rev. Stat. § 652.150 because the amount of unpaid overtime caused by Consumer Cellular's computation error was relatively small and had previously been paid to class members who were employed at the time Consumer Cellular corrected the error. In order to recover penalty wages for the two Oregon subclasses, Plaintiff would have had to establish that Consumer Cellular willfully violated Oregon law, which Plaintiff states would be difficult to accomplish. Plaintiff also states that it could face significant challenges in maintaining Rule 23 class certification on that issue. Thus, the Amended Settlement balances the strengths and weaknesses of the parties' positions on class treatment, liability, and damages, while providing significant recovery for the class members. This factor weights in favor of approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The central consideration for this factor is the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*.

The parties agree that if this case had not settled, they would have had to engage in significant additional discovery and to file motions for conditional certification of the FLSA Class, certification of the Rule 23 Class, likely cross-motions on summary judgment, and Consumer Ceullar's presumptive motions to decertify the FLSA and Rule 23 classes. These litigation steps would have been expensive, complex, and protracted. The Amended Settlement

PAGE 9 – OPINION AND ORDER

avoids these expenditures of resources for all parties and the Court and provides Settlement Class Members with "certain and prompt relief," a "significant benefit that [they] would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 446 (E.D. Cal. 2013). This factor weights in favor of approval.

### 3.  The Risk of Maintaining Class Action Status

The parties assert that even though certification of the FLSA collective class was probable as a result of the FLSA regular rate computation error, Plaintiff faced the risk that she would not be able to certify and to maintain a Rule 23 class for the Oregon employees. In addition, even assuming Plaintiff prevailed on class certification, Plaintiff still faced decertification on both classes because Consumer Cellular asserted that: (1) Plaintiff's claims suffered from multiple issues making class or collective treatment inappropriate, and (2) Oregon rules relating to pre-conditions for class treatment applied and precluded class treatment of the Oregon wage penalty claims. The Court finds that resolving the case now guarantees recovery for the participating Settlement Class Members. This factor weights in favor of approval.

### 4.  The Amount Offered in Settlement

When considering the fairness and adequacy of a settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros*, 303 F.R.D. at 370 (quoting *DIRECTV*, 221 F.R.D. at 527). "It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

Members of the Arizona Employee Subclass will receive the amount of their actual recomputed overtime or $50, whichever is greater. The parties state that the average recovery for the 52 participating members of the Arizona Employee Subclass members is $60. Members of

the Arizona Employee Subclass who did not return a Claim Form will not receive any benefit, but they also do not release any rights under the FLSA or Arizona law.

The proposed settlement provides $364,635.58 (exclusive of attorneys' fees, costs, and the incentive payment) to the participating class members and the non-participating members of the Oregon Current and Former Employee Subclasses. As discussed, participating Oregon current employees will receive $880 each, and participating Oregon former employees will receive $1,791 each. The parties assert that the differing recoveries for the Oregon Current and Former Employee Subclasses are in recognition of fact that the entitlement of the Oregon Current Employee Subclass to a wage penalty pursuant to Or. Rev. Stat. § 652.150 is less certain. Although the entitlement of the members of the Oregon Former Employee Subclass to this penalty is more likely, those subclass members still face uncertainties caused by Consumer Cellular's claim that it did not act willfully and its claim that Plaintiff failed to comply with Oregon's pre-litigation class action notice requirements. Oregon Current and Former Employee Subclass members who did not opt-out will receive $35 and release claims under Oregon law, but will not release any FLSA claims.

Moreover, the Settlement Class Members' recovery far exceeds their actual damages. The actual amount of overtime at issue for the Settlement Class Members ranged from $.02 to $822, with the next closest amount at $360. 646 of the Settlement Class Members had actual overtime amounts at issue under $25. Finally, the fact that there were no objections to the Amended Settlement and only two opt-outs suggests that the amount is fair and adequate. *See Barbosa*, 297 F.R.D. at 447 (noting that the lack of objections and single request to opt-out of the agreement showed class member support of settlement). This factor weights in favor of approval.

### 5.  The Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The Court and the parties may also rely on discovery developed in prior or related proceedings. *Linney*, 151 F.3d at 1239-40.

The parties assert that they obtained sufficient discovery to assess the claims and defenses in this case. Before the mediation, Plaintiff required Consumer Cellular to produce sufficient documentation regarding Consumer Cellular's claim that the computation error was limited to an approximately seven-month period and that Consumer Cellular paid the recomputed overtime to the impacted employees still employed by Consumer Cellular when Consumer Cellular discovered the error. Consumer Cellular provided this data. In addition, the parties' use of mediation after conducting discovery, and the exchanges of information that occurred during and after the mediation, assure that the parties had more than adequate information with which to assess their cases and reach a reasonable settlement. This factor weights in favor of approval.

### 6.  The Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" *Id.* (alteration omitted) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Absent fraud

or collusion, courts can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa*, 297 F.R.D. at 447.

Class counsel have extensive experience in representing employees in wage and hour litigation. Alan J. Leiman has over 24 years of litigation experience, including 5 years of experience representing plaintiffs in wage and hour class and collective actions. Drew G. Johnson has six years of legal experience, including 5 years of litigation experience representing plaintiffs in wage and hour class and collective actions. Counsel for both parties agree that the settlement is fundamentally fair, adequate, and reasonable; is the result of arm's-length negotiations between counsel representing the interests of Plaintiff and Consumer Cellular; was facilitated by a skilled mediator; and occurred only after thorough factual and legal investigation. This factor weights in favor of approval.

### 7.    The Presence of a Government Participant

The Class Action Fairness Act (CAFA) provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant . . . shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement.

> * * *

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). The parties state that they provided notice of the proposed settlement to the Attorneys General of the United States, Arizona, and Oregon on March 19, 2017.[1] The 90-

---

[1] The Court observes that the parties did not comply with the 10-day notice period required by Section 1715. Nevertheless, the Court finds that " the substance of the requirements have been satisfied insofar as giving federal and state officials sufficient notice and opportunity

day notice period expired on June 19, 2017, with no Attorney General having objected to the proposed settlement. This factor weights in favor of approval.

### 8.  The Reaction of the Settlement Class

Of the 693 notice packets successfully mailed to Settlement Class Members, no one objected and only two individuals sought to exclude themselves from the Amended Settlement. CAA received responses from 344 of the 693 Settlement Class Members who received the notice packet, which is a response rate of 50.1%. The participation rate, in combination with the lack of any objections to the Amended Settlement, provides a strong presumption that the Amended Settlement is fair, reasonable, and adequate. *See, e.g.*, *DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *OmniVision*, 559 F. Supp. 2d at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Thus, this factor weighs in favor of approval.

### 9.  Evidence of Collusion

Courts considering a pre-class certification settlement must examine whether the settlement was the result of good faith, arm's-length negotiations or the result of fraud and collusion. *Bellinghausen*, 306 F.R.D. at 258. The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded

---

to be heard concerning the" Amended Settlement. *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 287 n.10 (E.D. Pa. 2012).

to revert to a defendant rather than to be added to the class fund. *In re Bluetooth*, 654 F.3d at 947.

First, class counsel does not receive a disproportionate distribution of the settlement. Although Consumer Cellular will pay a total of $364,635.58 to Settlement Class Members, which is only about 44% more than the requested amount in attorney's fees, the class still receives considerably more than counsel. Greater participation would have increased the spread between the requested attorney's fees and the amounts paid to the class members, but at close to 50%, the response rate was reasonable. Moreover, there is no evidence that CAA failed adequately to notify the Settlement Class Members.

Second, the parties negotiated a "clear sailing" arrangement whereby Consumer Cellular agreed not to object to the class counsel's request for attorney's fees, but this fact does not warrant denying final approval because the Amended Settlement provides that the Court's approval of the attorney's fees is separate from its approval of the Amended Settlement. Moreover, the parties engaged in settlement negotiations overseen by a neutral mediator, and there have been no objections to the settlement. *See Deaver v. Compass Bank*, 2015 WL 8526982, at *9 (N.D. Cal. Dec. 11, 2015) (approving a proposed settlement even though two of three factors were present, including a clear sailing provision, because there were no objections to the settlement and the "parties engaged in settlement talks overseen by a neutral mediator before agreeing on this settlement").

Third, although the Amended Settlement provides for reversion to Consumer Cellular of payments not awarded, several factors support reversion, and there is no evidence that the reversion is the product of collusion. Actual FLSA overtime underpayments were low, ranging from $.02 to $822, with the next closest underpayment at $360. The average amount of unpaid

overtime is $11.84. The recoveries provided for in the Amended Settlement, however, are substantially greater than the actual underpayments. The Amended Settlement was driven by the highly disputed alleged entitled of the Oregon Current and Former Employee Subclass Members to penalty wages under Or. Rev. Stat. § 652.150, not fraud or collusion.

Although two of the *Bluetooth* factors are present, the record contains no evidence of fraud or collusion. The parties reached the Amended Settlement only after working with a neutral mediator and conducting an additional five months of negotiation after the Court's denial of the initial proposed settlement. Accordingly, this factor weighs in favor of approval.

### 10. Conclusion

After considering the relevant factors and circumstances, the Court finds that the Amended Settlement is fair, reasonable, and adequate to the Settlement Class Members and that each Settlement Class Members (except those who have timely submitted a valid request for exclusion) shall be bound by the Amended Settlement. The persons who have timely requested exclusion from the Settlement Class are not Settlement Class Members, shall have no rights or interests with respect to the Amended Settlement, and shall not be bound by any orders or judgments entered in respect to the Amended Settlement.

### C. Incentive Award, Attorney's Fees, and Costs

#### 1. Incentive Award

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized carefully to ensure "that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1163. A court should analyze incentive awards individually and, as relevant to this case, should consider

factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Staton*, 327 F.3d at 977 (alteration omitted) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiff contributed considerable time and effort and personal resources towards the settlement in this case. Before the Plaintiff filed the case, Plaintiff provided the documentation that allowed her counsel to discover the regular rate computation error that supports the Plaintiff's theory of the case. Plaintiff assisted with the preparation and review of the Complaint before filing it. During the approximately 4.5 month period between filing and the mediation, Consumer Cellular provided data and documentation to Plaintiff's counsel for review and analysis, and Plaintiff assisted her counsel by answering questions about incentive pay, bonuses, and other issues that counsel was evaluating.

The parties note Plaintiff also traveled a considerable distance at her own expense to attend an all-day mediation in Portland. Plaintiff was an active participant at the mediation, acted as an advocate for the employees, and did not appear to be acting in her own self-interest. In the 4.5 months that the parties spent negotiating the written settlement agreement after the mediation, Plaintiff contacted counsel for updates, reviewed the settlement agreement, and posed questions about it before signing it. Under these circumstances, Plaintiff's requested incentive award of $2,500 is reasonable.

### 2. Attorney's Fees

Requests for attorney's fees must be made by a motion pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h), and notice of the motion must be served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed along with a motion for certification, notice to class members of the fee motion ordinarily accompanies the notice of the

PAGE 17 – OPINION AND ORDER

settlement proposal itself. Advisory Committee Notes to Fed. R. Civ. P. 23(h). The deadline for

class members to object to requested fees must be set after the motion for the fees and documents

supporting the motion have been filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988,

993 (9th Cir. 2010). "Allowing class members an opportunity thoroughly to examine counsel's

fee motion, inquire into the bases for various charges and ensure that they are adequately

documented and supported is essential for the protection of the rights of class members." *Id.*

at 994. Here, the notice and filing of the motion for attorney's fees complied with *In re Mercury*,

providing Settlement Class Members with the opportunity to review Class Counsel's motion for

attorney's fees and supporting documents before the deadline to object.

In considering the amount of attorney's fees for class counsel where there is a common

fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery

method." *In re Bluetooth*, 654 F.3d at 942. Courts typically use the percentage approach when

awarding attorney's fees with the lodestar serving as a "cross check" on the reasonableness of

the percentage. *See, e.g.*, *Barbosa*, 297 F.R.D. at 448; *Franco v. Ruiz Food Prods., Inc.*, 2012

WL 5941801, at \*18 (E.D. Cal. Nov. 27, 2012). Under either method, the court must exercise its

discretion to achieve a reasonable result. Because reasonableness is the goal, "mechanical or

formulaic application of either method, where it yields an unreasonable result, can be an abuse of

discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th

Cir. 2002).

"Under the percentage-of-the-fund method, the district court may award plaintiffs'

attorneys a percentage of the common fund, so long as that percentage represents a reasonable

fee. The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-

the-fund method." *Stanger*, 812 F.3d at 738 (citation omitted); *see also Hanlon*, 150 F.3d

at 1029. This amount may be adjusted, however, when "special circumstances" warrant a

departure. *In re Bluetooth*, 654 F.3d at 942. Courts must place in the record the relevant special

circumstances. *Id*. Factors that may be considered in making such a departure include: (1) the

result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill;

(5) the complexity of the issues; (6) the risks involved in the litigation; (7) the reaction of the

class; (8) non-monetary or incidental benefits, including helping similarly situated persons

nationwide by clarifying certain laws; and (9) comparison with counsel's lodestar. *See Vizcaino*

*v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Heritage Bond Litig.*, 2005

WL 1594403, at \*18 (C.D. Cal. June 10, 2005).

"Under the lodestar method, the Court multiplies a reasonable number of hours by a

reasonable hourly rate." *Id.* at 1006. Because there is a strong presumption that the lodestar

amount represents a reasonable fee, adjustments to the lodestar 'are the exception rather than the

rule.'" *Stanger*, 812 F.3d at 738 (quoting *Fischel*, 307 F.3d at 1007). "Once the lodestar has been

calculated, 'the court may adjust it upward or downward by an appropriate positive or negative

multiplier reflecting a host of reasonableness factors, including the quality of representation, the

benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

nonpayment.'" *Id.* at 740 (quoting *In re Bluetooth*, 654 F.3d at 941-42).

Plaintiff seeks $250,000 in attorney's fees, which is 27.8% of the $900,000 in the Gross

Settlement Fund. Thus, the Court considers whether any of the relevant special circumstances

warrant departure from the 25% benchmark and uses the lodestar as a cross-check.

### a. Results Obtained

The most critical factor in granting attorney's fees is the overall result and benefit to the

class. *Richardson v. THD At-Home Servs., Inc.*, 2016 WL 1366952, at \*8 (E.D. Cal. Apr. 6,

2016). The Amended Settlement provided a total possible settlement amount of up to $623,500

to pay the Settlement Class, with the balance of the amount allocated to the negotiated attorney's fees, incentive award, and settlement administration costs. In addition, the individual unpaid overtime actually accrued by class members ranges from a low of $.02 to a high of $822, with the next closest amount of $360. Excluding the two individuals who had $360 and $822 in overtime, the average amount of unpaid overtime due to the regular rate calculation error is $11.84. Further, 646 of the 728 Settlement Class Members had less than $25 of overtime pay at issue. Consumer Cellular states that before the commencement of this action, it had also paid then current Arizona and Oregon employees the amount of their actual re-computed overtime after correcting for the seven-month regular rate calculation error.

The Amended Settlement provides that participating Arizona subclass members receive their actual re-computed overtime after correcting for the regular rate computation error or $50, whichever is greater. The Oregon Current Employee Subclass will receive $880, and the Oregon Former Employee Subclass will receive $1,791. Members of the Oregon subclasses who do not return Claim Forms or request exclusion will receive $35. These payments are a positive result to the Settlement Class Members relative to the actual damages that they suffered.

### b.  Risk of Litigation

"The risk of costly litigation and trial is an important factor in determining the fee award." *Rosales*, 2015 WL 4460635, at *20 (citing *Chem. Batik v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994)). When considering the risks posed in litigation, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "In cases where recovery is uncertain, an award of one third of the common fund as attorneys' fees has been found to be appropriate." *Franco*, 2012 WL 5941801, at *16.

Plaintiff faced risks on multiple fronts in litigating this hybrid Rule 23 class and collective action. Although the FLSA claims were common to the two-state collective, the Oregon Rule 23 subclasses had separate issues relating to each subclass' entitlement to an Oregon wage penalty. Hybrid class and collective cases present substantial risks that subclass groupings may be decertified after significant time and expense because of the myriad claims and issues involved in the dispute. Consumer Cellular also raises a number of defenses that, if successful, could significantly devalue or end the case. For instance, Consumer Cellular asserted that Plaintiff did not provide an ORCP 32H notice of class action that Consumer Cellular believes was required. Second, Consumer Cellular disputes the entitlement of the Current Oregon Employee subclass members to penalty wages under Or. Rev. Stat. § 652.150. Third, Consumer Cellular contended that it did not act "willfully."

These legal and factual issues presented serious risks to the viability of this case and the potential recovery that Plaintiff could receive. Plaintiff's counsel's ability to navigate these matters and reach a favorable settlement for the class members warrants the 2.8% upward departure from the 25% percent benchmark.

### c. Counsel's Skill

"The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award." *Richardson*, 2016 WL 1366952, at *9. "FLSA claims involve complex mixed questions of fact and law, and issues must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Moreover, courts have recognized that hybrid Rule 23 class and collective actions are the most complex FLSA cases. *See Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (observing that "courts have recognized that FLSA cases are complex and that '[a]mong FLSA cases, the most

complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class action pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b).'" (alteration in original) (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011)).

The materials filed in support of Plaintiff's Motion for Attorneys' Fees demonstrate that Plaintiff's counsel have substantial experience in wage and hour class and collective actions. Alan Leiman has over 24 years of litigation experience, including five years of experience representing plaintiffs in wage and hour class and collective actions. Drew Johnson has six years of legal experience, including five years of litigation experience representing plaintiffs in wage and hour class and collective actions. Johnson also has a Master's Degree in Conflict Resolution, in addition to 15 years of experience as a civil engineer and technical management consultant that he applies to his evaluation of complex wage and hour cases. Stacy McKerlie, an associate who assisted with this case, has two years of experience and has since left the firm for the Oregon Bureau of Labor and Industries. This factor favors an upward departure of 2.8% from the 25% benchmark.

### d.  Contingency Fee Agreement

In cases taken on contingency, courts tend to find above-market-value fee awards appropriate to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees and to compensate counsel for the risk of non-payment that they assume. *Deaver*, 2015 WL 8526982, at *11 (citing *In re WPPSS Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). "This is especially true when class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded [a] 33 percent benchmark percentage." *Id*.

PAGE 22 – OPINION AND ORDER

Plaintiff's counsel accepted this case on a contingent basis, covered the costs of litigation, and provided their time without a guarantee of compensation. This factor leans slightly in favor of the 2.8% upward departure. *See Richardson*, 2016 WL 1366952, at *9 ("In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, this factor weighs slightly in favor of a departure from the benchmark fee award.").

### e.   Awards in Similar Cases

Several courts in the Ninth Circuit have held in wage and hour class actions that a 30% or higher award is appropriate. *See Miller*, 2015 WL 4730176, at *8 (noting that courts in the Ninth Circuit "usually award attorneys' fees in the range of 30-40% in wage and hour class actions" where the common fund is under $10 million). Courts have commonly approved awards of approximately 33% in such cases. *See, e.g.*, *Deaver*, 2015 WL 8526982, at *9; *Lusby v. GameStop Inc*., 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015); *Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013); *Barbosa*, 297 F.R.D. at 450; *Franco*. 2012 WL 5941801, at *18 same); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012); *Vasquez*, 266 F.R.D. 482 ; *Romero v. Producers Dairy Food Inc.*, 2007 WL 3492841, at * 4 (E.D. Cal. Nov. 14, 2007). Plaintiff's request for an award of 27.8% of the common fund is in line with attorney's fees approved in other wage and hour class actions in the Ninth Circuit, which supports the slight upward departure from the benchmark.

### f.   Comparison with Counsel's Lodestar

Plaintiff's counsel calculates the lodestar at $85,265 based on 283.2 billable hours, including 50 hours to-be billed after the filing of the motion for attorney's fees. Plaintiff seeks an hourly rate of $325 for Alan J. Leiman, $275 for Drew G. Johnson, and $175 for Stacy

McKerlie. The Court finds these hours and rates reasonable. The award sought by Plaintiff's counsel is 2.9 times the lodestar. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Franco*, 2012 WL 5941801, at *21 (quoting *Fischel*, 307 F.3d at 1008). "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Miller*, 2015 WL 4730176, at *9. The Court finds a multiplier of 2.9 reasonable in this case. Thus, the Court grants Plaintiff's request for an award of $250,000 in attorney's fees.

### 3.   Costs

Plaintiff requests administrative costs of $24,000, which is the amount specified in the Amended Settlement and the amount being charged by CAA, the third-party settlement administrator retained by Plaintiff's counsel to administer the settlement. These costs cover the creation and hosting of a claims website, the maintenance of a call center and address database, the mailing of notices, the processing of forms, and the distribution of benefits. The Court finds that the requested costs have been reasonably and necessarily incurred and are recoverable from the proceeds of the common fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) (noting that "jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

The requested costs are consistent with costs awarded in wage and hour matters, and payment of these costs is already factored into the allocation, which has been communicated to Plaintiff. *See, e.g., Rosales*, 2015 WL 4460635, at *32 (approving costs of $36,620.54 in unpaid

wages case); *Barbosa*, 297 F.R.D. at 454 (finding costs of $32,722.74 for travel, mediation fees, photocopying, private investigator to locate missing class members, and delivery and mail charges). Thus, the Court approves the requested costs of $24,000.

## CONCLUSION

Plaintiffs' Joint Motion for Settlement (ECF 28) is GRANTED. Plaintiff's Unopposed Motion for Attorney Fees (ECF 24) is GRANTED. Class Counsel is awarded attorney's fees in the amount of $250,000 and costs in the amount of $24,000. The named Plaintiff is awarded $2,500 as an incentive award.

**IT IS SO ORDERED**.

DATED this 21st day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge